UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------

JAMIE DOMROE,

                  Plaintiff,

      v.

NASSAU COUNTY

                  Defendant.
-------------------------------------------------------

Index No.: 2:24-CV-6545

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff JAMIE DOMROE ("Plaintiff"), on behalf of herself, by and through her attorneys VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief against Defendant NASSAU COUNTY ("Defendant"), for violations of the Americans with Disabilities Act, the New York State Human Rights Law, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. This is an action brought pursuant to the Americans with Disabilities Act of 1990 as amended, 42 USC §§12111 *et. seq.* ("ADA"), and the New York State Human Rights Law, as contained in the New York Executive Law §§ 290 *et. seq.* ("NYSHRL") to secure protection of and regress for the deprivation of rights guaranteed by the ADA and NYSHRL against discrimination in employment based upon disability.

2. Plaintiff is employed by Defendant at the Nassau County Department of Social Services ("DSS") as a social worker[1].

---

[1] As of the day this complaint is filed, Plaintiff is unaware of the status of her employment. She has not received any notice of termination.

3. On July 16, 2019, while at work, Plaintiff was physically assaulted by one of her Social Services clients, resulting in physical and mental injuries.

4. Specifically, Plaintiff a 5 foot tall, 107 pound female was cornered in her cubicle and beaten by an overpowering man standing approximately 6'1 and 300 pounds.

5. Since that time, Plaintiff has undergone significant medical and mental health treatments including surgery of her cervical spine to treat the injuries stemming from the attack.

6. Pursuant to Defendant's health coverage policies, Plaintiff was entitled to receive extended health insurance coverage.

7. Defendant refused to provide the extended health coverage and required Plaintiff to incur the costs of health insurance coverage for herself and her family.

8. Despite her previously granted accommodations, on November 8, 2021, November 9, 2021, January 28, 2022, April 20, 2022, and May 26, 2022, Plaintiff's requested reasonable accommodations for her disability were all either denied or ignored by Defendant in violation of the NYSHRL and the ADA.

9. At no time since Plaintiff's first written request for a continued accommodation did Defendant engage in the interactive process required under the NYSHRL and the ADA.

10. Upon information and belief, Plaintiff's department indicated that they could in fact provide the accommodation and she could continue her job remotely, but Defendant has continually refused to grant her accommodation requests.

11. Based on the foregoing, Defendant conduct violates the NYSHRL and the ADA.

12. Plaintiff is entitled to recover: (i) back pay; (ii) emotional damages; (iii) front pay; (iv) interest; (v) attorneys' fees and costs; and (vi) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, because this action is brought under the ADA.

14. This Court has supplemental jurisdiction over Plaintiff's non-federal claims under 28 U.S.C. § 1367(a) because the non-federal claims arise from a common nucleus of operative fact with the federal claims, and therefore form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this Court under 29 U.S.C. § 1391(b)(1) because Defendant resides in this district. Venue is also proper in this Court under 29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

16. Plaintiff is an individual with disabilities within the meaning of the NYSHRL and the ADA. She has been an employee of Defendant since November 2005.

17. Plaintiff began working as a Psychiatric Social Worker I for the Department of Emergency Housing within Defendant's DSS in September 2017.

18. Plaintiff is in a competitive civil service position recognized by the Nassau County Civil Service Commission.

19. Plaintiff resides in Roslyn Harbor, NY.

20. Defendant is Plaintiff's employer and the employer of DSS employees.

21. Defendant Nassau County is an employer within the meaning of NYSHRL § 292(5), 42 U.S.C. § 12111(5) of the ADA, and under all relevant laws.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

22. Plaintiff, who alleges claims under the ADA, timely filed a complaint of discrimination with the EEOC on August 11, 2022.

23. Plaintiff has requested and received a Right to Sue letter from the EEOC on June 24, 2024.

## STATEMENT OF FACTS

24. In November 2005, Plaintiff began working for Defendant as a Community Services Representative and then as a Psychiatric Social Worker I for the Department of Emergency Housing within DSS.

25. The essential functions of Plaintiff's job include: "(1) providing intensive psychiatric casework and counseling services to patients and members of their family and (2) obtaining information from patients, members of the family, outside treatment providers and all other relevant parties to assist the multidisciplinary treatment team in the assessment of patient's emotional and behavioral needs."

26. On July 16, 2019, Plaintiff was attacked at work by a social services recipient. Following the attack, Plaintiff went out of work and was required to use her paid time off before going on worker's compensation leave until November 2, 2020.

27. Since her attack up until her first request to return to work with accommodations in October 2020, Plaintiff communicated frequently with Human Resources regarding her ongoing treatment for her physical and mental injuries and her ability to return to work. Plaintiff provided Human Resources with updates on a regular basis, including providing them reports from her treating healthcare professionals.

28. On October 26, 2020, while still on leave, Plaintiff signed and submitted a request for a reasonable accommodation for fully remote work. She explained that she had developed

PTSD and sustained extensive physical injuries from the attack and would need to work remotely while undergoing treatment.

29. Specifically, Plaintiff communicated with Jeanne Vassel, Director of Human Resources/Payroll for Nassau County Department of Social Services. Ms. Vassel and Human Resources were Plaintiff's contact for her request for her reasonable accommodation and return to work. Ultimately, Human Resources approved Plaintiff's initial request for an accommodation of remote work.

30. From November 2, 2020, through May 6, 2021, Plaintiff worked remotely and successfully performed the essential functions of her job.

31. On May 10, 2021, Plaintiff went back out on leave once again using her paid time off and ultimately going back on worker's compensation leave to undergo surgery of her cervical spine because of the injuries she sustained stemming from the November 2019 attack.

32. On June 25, 2021, Defendant's EEO Representative Constance Kenton ("Kenton") emailed Plaintiff notifying her that the County directed all employees to return to work by July 5th, 2021, and that all employees working from home would need to re-submit an application to be re-evaluated. However, Plaintiff was now out on worker's compensation leave and was no longer working remotely.

33. On June 28, 2021, Kenton, unaware that Plaintiff was now on a medical leave, notified Plaintiff that remote work was no longer an option. Plaintiff immediately updated Kenton on the status of her medical treatment and that she was back out on leave. After June 28, Kenton never spoke to Plaintiff again.

### *First Denial of Accommodation*

34. On November 8, 2021, Plaintiff spoke with Karen Tejada ("Tejada"), an Administrative Assistant in DSS's HR department. Tejada was one of Defendant's points of contact for Plaintiff regarding Plaintiff's leave, medical evaluations, and requests for accommodations. She was the individual who reached out to Plaintiff regarding her return-to-work options.

35. During their call, Tejada told Plaintiff that Human Resources had issued a countywide bulletin lifting Covid-19 restrictions that impacted any requests for accommodations and remote work.

36. On November 9, 2021, Tejada sent Plaintiff the Human Resources bulletin informing her that all employees working from home needed to submit a new application for accommodation. The memo stated that "[e]mployees who anticipate a need for reasonable accommodation pursuant to the *Nassau County Employment Opportunity* ("EEO") policy . . . must contact their Departmental EEO or Human Resources Representative(s) accordingly."

37. The County's bulletin regarding remote work specifically states that Human Resources is the point of contact for reasonable accommodation requests. At a minimum, it is understood that Tejada is a representative for purposes of notice to Defendant for Plaintiff's requests for reasonable accommodations.

38. Plaintiff told Tejada that she wanted to reapply for the remote work accommodation and had the medical documentation to support her request. Tejada informed Plaintiff that the County would not provide the remote work accommodation, even though Plaintiff had received this accommodation in the past.

39. On November 9, 2021, Plaintiff sent a follow-up email to Tejada regarding their phone call the day prior. Plaintiff attached a letter dated October 26, 2021 from her treating psychiatrist, Dr. Christina Vaglica, recommending that Plaintiff work remotely, as an accommodation, beginning in December 2021. The letter stated, "I have been treating [Plaintiff] for PTSD related to her 7/16/19 work assault. From a psychological standpoint, [Plaintiff] is unable to return to work in the office at this time. She will be capable of returning to work in a remote fashion as of this December 2021. Her psychologist and I are attempting to help her prepare for a return to work in her office setting in approximately June of 2022."

40. Tejada, like Kenton, informed Plaintiff that remote work was not an option. Instead of engaging in any interactive process, Tejada re-sent Defendant's June 16, 2021 bulletin (which included Defendant's blanket ban on remote work) to Plaintiff.

41. Thus, despite reading and responding to Plaintiff's clear request for a reasonable accommodation, Tejada denied Plaintiff's request without any deliberation. In addition, Tejada did not direct Plaintiff to the EEO office or anyone else, nor indicate or inform Plaintiff that she was not the person to whom the request should be made. Further, Tejada's responding with the denial suggested that Tejada *was* one of the proper parties to direct a reasonable accommodation request.

### Second Denial of Accommodation

42. On January 28, 2022, Plaintiff emailed another request to return to work to Tejada, asking for the same remote work accommodation that she had received between November 2, 2020, and May 6, 2021. In support of the request, Plaintiff attached a letter from Dr. Peter Passias, her treating physician, dated January 26, 2022, which recommended Plaintiff work remotely for the next three months.

43. Tejada did not respond. Nor did she forward it to the EEO office. No one from Defendant reached out to Plaintiff regarding this request.

### Third Denial of Accommodation

44. On April 20, 2022, Plaintiff emailed her third request for a remote work accommodation to Tejada. Plaintiff submitted an additional letter from Dr. Vaglica, dated April 15, 2022, in support of the request. Tejada once again failed to even acknowledge the request.

### Fourth Denial of Accommodation

45. On May 26, 2022, through counsel, Plaintiff again requested a remote work accommodation. Plaintiff's counsel sent Defendant copies of Plaintiff's email exchanges with Tejada, wherein Plaintiff requested an accommodation and followed up on Defendant's decision to deny her request. Inexplicably, Susan Tokarski, from the Nassau County Attorney's office, stated that "The County disputes that any of the medical notes were received."

46. At no time since her first written request for continued accommodation did Defendant engage in the interactive process required of the ADA and the NYSHRL.

47. Plaintiff's requests for continued accommodation were reasonable as (1) Defendant previously provided her the exact same accommodation, (2) Defendant already provided Plaintiff with the remote work equipment necessary to perform her duties and she is still in possession of this equipment, and (3) Plaintiff's department is still not required to meet clients in person and are performing all their duties via telephone and email to this very day.

48. Upon information and belief, Plaintiff's department indicated Plaintiff could in fact continue her job remotely, and that her request was reasonable and available. But Defendant refused to grant her requests.

49. As a result of Defendant's continued failures to accommodate Plaintiff's previously approved accommodations, or even engage in a modicum of an interactive exchange, Plaintiff was unable to return to work. Due to their failure to accommodate, Plaintiff has lost continued income, health coverage for her and her family, as well as fringe benefits and continued pension contributions.

*Retaliation*

50. On April 12, 2022, the County Comptroller's office called Plaintiff. The caller stated that Plaintiff would be receiving a very important letter in the mail and urged that Plaintiff should read the letter immediately as she would be losing her, and her family's, health benefits if she did not respond.

51. Plaintiff's younger brother tragically passed on April 10, 2022. She received this call in the middle of her brother's funeral services. Despite notifying the Defendant of this terrible news, the Defendant would not agree to extend the time for Plaintiff to address this serious issue.

52. On April 14, 2022, while still grieving and attending bereavement services with her family, Plaintiff received a letter from the office of the Comptroller threatening to not only drop her and her family from her health insurance coverage, but threatening to retroactively terminate her previous health coverage, giving her only 6 days to pay back almost $20,000 in premiums to the County for payments they agreed to pay on her behalf while she was on a leave from an on-the-job injury.

53. The letter set a deadline for Plaintiff to make a payment of $19,114.83 by April 20, 2022.

54. Defendant sent this letter less than three months after Plaintiff's prior request for a reasonable accommodation.

55. Had Defendant granted Plaintiff's reasonable accommodation requests, Plaintiff would have maintained her and her family's health insurance coverage, and she would not have incurred this cost.

56. Furthermore, Plaintiff was not required to pay for her health coverage at this time because she had returned to work on a full-time basis before going back out for medical leave relating to a surgery resulting from the assault at work. Therefore, her entitlement to continued health coverage began again with her second medical leave.

57. Also, pursuant to Plaintiff's collective bargaining agreement, an employee receiving Workers' Compensation payments caused by an assault is entitled to twenty-four (24) months of health insurance and benefit contributions.

58. As such, Plaintiff should never have been required to pay any amount for her continued health insurance benefits.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF THE ADA
### Failure to Accommodate

59. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

60. Plaintiff is an individual with disabilities. She has been diagnosed with PTSD, a mental impairment that substantially limits one or more of her major life activities including but not limited to thinking. She also has physical disabilities based on her spinal injuries suffered in the July 16, 2019 attack. The spinal injuries substantially limit major life activities including but not limited to lifting and performing manual tasks.

61. Plaintiff was qualified for her job at DSS as evidenced by her tenure and performance.

62. Following the incident on July 16, 2019, Plaintiff had been allowed a remote work accommodation from November 2, 2020, through May 6, 2021, and successfully fulfilled the essential functions of her duties.

63. On June 25, 2021, Defendant provided Plaintiff a memo stating that there was a new "no remote work" policy and that all employees needed to submit a new application for accommodation.

64. On November 8 and 9, 2021, January 28, 2022, April 20, 2022, and May 26, 2022, Plaintiff submitted requests for reasonable accommodations. Defendant denied each of Plaintiff's four separate requests for reasonable accommodations citing a general policy that bans remote work.

65. Defendant's ban violates the ADA as it unilaterally circumvents the interactive exchange required of the ADA and does not account for circumstances like Plaintiff's.

66. Plaintiff's request to work remotely was reasonable because (1) Defendant previously provided her the exact same accommodation, (2) Defendant already provided Plaintiff with the remote work equipment necessary to perform her duties and she is still in possession of this equipment, and (3) Plaintiff's department is still not required to meet clients in person and are performing all their duties via telephone and email to this very day.

67. Defendant committed unlawful employment practices and discriminated against Plaintiff by failing to accommodate her disability or engage in a process to determine whether an accommodation was available to her.

68. As a direct and proximate consequence of Defendant's intentional and unlawful employment policies and practices, including Defendant's violation of Plaintiff's rights under the ADA, Plaintiff has suffered, and continues to suffer, monetary damages including, but not limited

to the termination of her health insurance coverage and other direct costs, as well as emotional distress damages. Plaintiff is entitled to recover monetary and other damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs from Defendant under the ADA.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF NYSHRL §§ 290 *et seq.*
**Failure to Accommodate**

69. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

70. Plaintiff is an individual with disabilities, including PTSD and spinal injuries.

71. Plaintiff was qualified for her job at DSS as evidenced by her tenure and performance.

72. Following the incident on July 16, 2019, Plaintiff had been allowed a remote work accommodation from November 2, 2020, through May 6, 2021, and successfully fulfilled the essential functions of her duties.

73. On June 25, 2021, Defendant provided Plaintiff a memo stating that there was a new "no remote work" policy and that all employees needed to submit a new application for accommodation.

74. On November 8 and 9, 2021, January 28, 2022, April 20, 2022, and May 26, 2022, Plaintiff submitted requests for reasonable accommodations. Defendant denied each of Plaintiff's four separate requests for reasonable accommodations citing a general policy that bans remote work.

75. Defendant's ban violates the NYSHRL as it unilaterally circumvents the interactive exchange required of the NYSHRL and does not account for circumstances like Plaintiff's.

76. Plaintiff's request to work remotely was reasonable because (1) Defendant previously provided her the exact same accommodation, (2) Defendant already provided Plaintiff with the remote work equipment necessary to perform her duties and she is still in possession of this equipment, and (3) Plaintiff's department is still not required to meet clients in person and are performing all their duties via telephone and email to this very day.

77. Defendant committed unlawful employment practices and discriminated against Plaintiff by failing to accommodate her disability or engage in a process to determine whether an accommodation was available to her.

78. As a direct and proximate consequence of Defendant's intentional and unlawful employment policies and practices, including Defendant's violation of Plaintiff's rights under the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary damages including, but not limited to the termination of her health insurance coverage and other direct costs, as well as emotional distress damages. Plaintiff is entitled to recover monetary and other damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs from Defendant under the NYSHRL.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF THE ADA
### Retaliation

79. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

80. On November 8 and 9, 2021, January 28, 2022, April 20, 2022, and May 26, 2022, Plaintiff submitted requests for reasonable accommodations.

81. In retaliation for four separate requests, Defendant threatened to collect premium payments that Plaintiff did not owe and would not have owed had she been allowed her reasonable accommodations.

82. The office of the Comptroller sent Defendant a letter threatening to drop her and her family from her health insurance coverage if she did not promptly pay back the premiums Defendant had agreed to pay on her behalf while she was on leave.

83. These premiums totaled in the amount of $19,114.83 and were suddenly due by April 20, 2022.

84. This letter was sent just three months after Plaintiff's most recent request for reasonable accommodations.

85. Had Defendant granted Plaintiff's reasonable accommodation requests, Plaintiff would have maintained her and her family's health insurance coverage, and she would not have incurred this cost.

86. Further, Plaintiff was not required to pay for her health coverage at this time because she had returned to work on a full-time basis before going back out for medical leave relating to a surgery resulting from the assault at work. Therefore, her entitlement to continued health coverage began again with her second medical leave.

87. Also, pursuant to Plaintiff's collective bargaining agreement, an employee receiving Workers' Compensation payments caused by an assault is entitled to twenty-four (24) months of health insurance and benefit contributions.

88. As such, Plaintiff should never have been required to pay any amount for her continued health insurance benefits.

89. Defendant's conduct constitutes retaliation under the ADA.

90. As a direct and proximate result of Defendant's actions, Plaintiff is entitled to recover monetary and other damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs from Defendant under the ADA.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF NYSHRL §§ 290 *et seq.*
**Retaliation**

91. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

92. On November 8 and 9, 2021, January 28, 2022, April 20, 2022, and May 26, 2022, Plaintiff submitted requests for reasonable accommodations.

93. In retaliation for four separate requests, Defendant threatened to collect premium payments that Plaintiff did not owe and would not have owed had she been allowed her reasonable accommodations.

94. The office of the Comptroller sent Defendant a letter threatening to drop her and her family from her health insurance coverage if she did not promptly pay back the premiums Defendant had agreed to pay on her behalf while she was on leave.

95. These premiums totaled in the amount of $19,114.83 and were due by April 20, 2022.

96. This letter was sent just three months after Plaintiff's first request for reasonable accommodations.

97. Had Defendant granted Plaintiff's reasonable accommodation requests, Plaintiff would have maintained her and her family's health insurance coverage, and she would not have incurred this cost.

98. Further, Plaintiff was not required to pay for her health coverage at this time because she had returned to work on a full-time basis before going back out for medical leave relating to a surgery resulting from the assault at work. Therefore, her entitlement to continued health coverage began again with her second medical leave.

99. Also, pursuant to Plaintiff's collective bargaining agreement, an employee receiving Workers' Compensation payments caused by an assault is entitled to twenty-four (24) months of health insurance and benefit contributions.

100. As such, Plaintiff should never have been required to pay any amount for her continued health insurance benefits.

101. Defendant's conduct constitutes retaliation under the NYSHRL.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff demands judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the ADA and the NYSHRL.

B. All damages which Plaintiff has sustained because of Defendant's conduct, including: (i) back pay; (ii) emotional damages; and (iii) front pay.

C. Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs.

D. Pre- and post-judgment interest as provided by law, and

E. Granting Plaintiff other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated: Garden City, New York
September 17, 2024

Respectfully Submitted,

/s/ *James Vagnini*
James Vagnini, Esq.
Brendan Carman, Esq.
jav@vkv.law
bcarman@vkv.law
**Valli Kane & Vagnini LLP**
600 Old Country Road, Ste. 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)

*Attorneys for Plaintiff*