Valli Kane & Vagnini

EMPLOYEE RIGHTS ATTORNEYS

600 Old Country Road
Suite 519
Garden City, NY 11530

Tel: (516) 203-7180
Fax: (516) 706-0248
www.vkvlawyers.com

September 25, 2026

Honorable Lee G. Dunst
United States Magistrate Judge
Alfonse M. D'Amato U.S. Courthouse
100 Federal Plaza, Courtroom 830
Central Islip, NY, 11722-4438

**Re: Domroe v. Nassau County (24-cv-06545)**

Judge Dunst:

Pursuant to Your Honor's Rule IV.D. and the September 2, 2026 Order, the parties submit this joint letter regarding the two discovery disputes that arose during the deposition of non-party witness Jamie Haruthunian.

## PLAINTIFF'S POSITION

### I. Defendant Improperly Directed Haruthunian Not To Answer Questions[1]

Plaintiff is also a plaintiff in a personal injury action against Central Nassau Guidance & Counseling Services ("CNG") and her former Nassau County Department of Social Services ("DSS") client (the "Client"). DSS is a third-party defendant. The case is pending in Nassau County Supreme Court, Index No. 606930/2020, and it relates to the Client assaulting Plaintiff while she was at work at DSS (the "PI Case"). The assault is discussed in the Complaint in this action, as it caused physical and mental disabilities which require the reasonable accommodations at issue here. *See* ECF No. 1 at ¶¶ 3-5.

In the PI Case, Plaintiff's attorneys[2] moved the Supreme Court to (1) compel the Client to execute records release authorizations; (2) authorize CNG and DSS to release the Client's records; (3) authorize any "witnesses who may be produced on behalf of [CNG, the Client, and DSS], or who may be noticed to appear on behalf of [CNG, the Client, and DSS], to testify regarding their knowledge of, and interactions with, [the Client]"; (4) compel the parties to appear for depositions subject to objections concerning privilege or HIPAA privacy considerations; (5)-(6) compel defendants to respond to discovery, or in the alternative, submit the portions of the discovery in dispute for *in camera* review; or (7) order other appropriate relief. *See* **Joint Ex. 2** ("PI Motion").

[1] Relevant portions of the transcript have been attached as **Joint Ex. 1.**

[2] Plaintiff has separate counsel for the PI Case.

On November 22, 2025, the Supreme Court denied the PI Motion. **Joint Ex. 3** (the "Order"). Plaintiff's PI counsel has appealed the Order. ***Id.***

During the Haruthunian deposition, we sought to question the witness about an email statement Haruthunian wrote about the Client's attack. This document was produced by Defendant in this action on January 6, 2026, in unredacted and non-bate-stamped format, and again on August 7, 2026, with the Client's name redacted and bate-stamped. We agreed to use the bate-stamped version of the document for the deposition. *See* **Joint Ex. 4** ("the Statement"). Counsel directed the witness not to answer any questions about the Statement. Counsel claimed that questions regarding the underlying attack "have nothing to do with this lawsuit." **Joint Ex. 1** at 28:7-8. Counsel also repeatedly accused us of acting in "bad faith" and objected under FRCP 30(d)(3). **Joint Ex. 1** at 21. According to Counsel, any questions about the Email are prohibited by the Order.

Counsel's relevancy argument makes little sense. For one thing, "lack of relevancy is not a proper basis for instructing a witness not to answer deposition questions." *Weinrib v. Winthrop-University Hosp.*, 2016 WL 1122033, *2 (E.D.N.Y. Mar. 22, 2016). More importantly, **Defendant's prior counsel and Counsel both produced the Email as relevant to Plaintiff's discovery requests.** Counsel's relevancy objection, therefore, contradicts Counsel's own discovery responses. At bottom, the attack cannot be separated from the accommodation claim. This is a disability discrimination case in which Plaintiff was attacked while working for Defendant, on Defendant's property, causing the disabilities (namely, PTSD) underlying her accommodation request. Haruthunian witnessed the attack, and as Plaintiff's supervisor, she has input into whether Plaintiff's remote work accommodation is reasonable. Her testimony as to the underlying attack, therefore, is relevant to key issues in this case, particularly where Plaintiff's accommodation requests specifically rely upon the brutality of the attack necessitating exposure therapy over time with the goal of Plaintiff eventually being able to physically return to the workplace.

The Order does not prohibit Haruthunian from answering questions underlying the attack. The Order is concerned with protecting the Client's personal and/or medical information. Here, we agreed to use a redacted exhibit and omit any references to the Client's name. There is a Protective Order in place, and we have no issue with Counsel marking portions of questioning as confidential. *See* May 4, 2026 Order. In sum, Haruthunian can testify about the attack, the workplace circumstances surrounding the attack, Defendant's safety protocols and procedures, the impact of the attack on Plaintiff and others, and the reasonableness of accommodations, all without eliciting information about the Client's personal and/or medical information.

Counsel's repeated "bad faith" objection is not only unappreciated and baseless, but it had the effect of impeding and frustrating "the fair examination the deponent." FRCP 30(d)(2). Plaintiff requests an order permitting her to **(a)** reopen the deposition of Haruthunian for questioning on these topics, **(b)** seek reasonable expenses incurred for reopening the deposition, and **(c)** reasonable attorneys' fees incurred by Plaintiff's counsel briefing this dispute.

## II. Defendant's Privileged Objection to Exhibit 14 Should Be Overruled

Counsel objected to the use of a non-redacted version of Plaintiff's deposition Exhibit 14 on privilege grounds (the "Email"). The Email was produced by Defendant on January 6, 2026[3], in unredacted format, and without any claimed privileges. *See* **Joint Ex. 6** Seven months later, on August 7, 2026, Defendant re-produced the Email, with nearly all text redacted, on the grounds of attorney-client privilege and work product. *See* **Joint Ex. 6**. Defendant's alleged privilege log is attached as **Joint Ex. 7**. For the purposes of the deposition, we agreed to use the redacted version, but we objected to Defendant's characterization of the Email as privileged. **Joint Ex. 1** at 67-69.

### A. Neither Attorney-Client Privilege Nor Work Product Privilege Applies

The burden is on the party invoking attorney-client privilege to show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cnty. of Erie,* 473 F.3d 413, 418-19 (2d Cir. 2007). The purpose of attorney-client privilege is "to encourage clients to make full disclosure to their attorneys." *U.S. v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Accordingly, "the privilege protects communications between the attorney and the client, not communications that prove important to an attorney's legal advice to a client." *Id.*

Defendant's privilege argument fails at step one: there is no communication between Defendant and Defendant's counsel in the Email. The only individuals on this email thread are Haruthunian, Jeanne Vassel, and Nancy Nunziata. *None* of them is Defendant's counsel, and thus the email cannot be a "communication between client and counsel."[4] Nor was the Email "made for the purpose of obtaining or providing legal advice." Haruthunian provided a summary of Plaintiff's job duties. Haruthunian did not provide legal advice (nor could she, as a non-attorney). Neither was Haruthunian seeking legal advice; she was merely responding to Vassel's request for information.

As with attorney-client privilege, Defendant bears the "heavy burden" of establishing that work product privilege applies to the Email. *Koumoulis v. Indep. Fin. Marketing Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013). Work product protects documents "prepared in anticipation of litigation…by or for a party or by or for that … party's representative." *Cicel (Beijing) Science & Tech. Co., Ltd. v. Misonix, Inc.*, 331 F.R.D. 218, 226 (E.D.N.Y. 2019) (internal quotations omitted). The "mere relation of documents to litigation does not automatically endow those documents with privileged status." *Koumanlis*, 295 F.R.D. at 39. Here, the Email does not reflect documents prepared in anticipation of litigation. The Email merely reflects a factual exchange between Human Resources and Haruthunian concerning Plaintiff's job duties.

Even if privilege attached, it was waived. Under Federal Rule of Evidence 502(b), a disclosure avoids privilege waiver only if: "(1) the disclosure was inadvertent; (2) the holder took reasonable steps to prevent it; and (3) the holder promptly took reasonable steps to rectify the

[3] Counsel has referred to Defendant's January 6, 2026 document production as being part of an informal, "quick look" arrangement between the parties. This is inaccurate. Defendant's prior counsel produced these documents along with a formal list of Responses and Objections, just as if it were a typical document production. **Joint Ex. 5.**

[4] Haruthunian's job title is Director of Housing for DSS. **Joint Ex. 1** at 11. Vassel's job title was Director of HR for DSS. *Id.* at 57-58. Nunziata's job title was Commissioner of DSS. *Id.* at 41-42.

error." FRE 502(b). It is Defendant's burden to show that privilege has not been waived. *Kanenka Corp. v. Cocrystal Tech. (Jiaxing) Co., Ltd.*, 801 F.Supp.3d 164, 170 (E.D.N.Y. 2025).

Defendant cannot meet this burden. Defendant produced the Email on January 6, 2026, in unredacted and non-bate-stamped format. The lack of bate-stamping or privilege log suggests that this many-thousands of pages production was simply a data dump produced without concern for whether it contained privileged documents. Further, Defendant cannot be said to have taken prompt action to rectify the error by asserting privilege seven months after production.

Plaintiff respectfully requests that Defendant's privilege objection as to this document be overruled, and that Plaintiff be permitted to reopen Haruthunian's deposition for questioning about the non-redacted version of the Email.

## DEFENDANT'S POSITION

Dispute Regarding Questioning of Non-Party Witness/Nassau County Employee Jamie Haruthunian Regarding Facts Underlying the July 16, 2029 Incident, Including Questioning with Respect to Her July 17, 2019 Email Summary Concerning the Incident

At the August 25, 2026 deposition of Ms. Haruthunian, who at all relevant times has served as the Director of Housing for DSS and was Plaintiff's direct supervisor, Plaintiff's counsel attempted to question her regarding the substance of an email summary she drafted with respect to the July 16, 2019 incident ("Incident"), in which Plaintiff was assaulted by a DSS client. *See* **Joint Exhibit "1"** at Pages 19 – 34. Ms. Haruthunian's summary is annexed hereto as **Joint Exhibit "4"**. It was produced as part of Defendant's August 6, 2026 Supplemental Response to Plaintiff's Demands (NYS System Emails) ("Supplemental NYS System Emails Response") in the form submitted herewith, to wit, marked as NYS Server Document 000370 and redacted to protect the identity of the DSS client. All records produced as part of the Supplemental NYS System Emails Response were provided without concession that they "are relevant or material to the subject matter of the instant litigation . . . or reasonably calculated to lead to the discovery or admissible evidence." *See* **Defendant's Exhibit "A."**

Ms. Haruthunian's email summary describes the Incident and includes a number of references to the client's DSS history and his mental and psychological state, which have no relevance to the allegations in the Complaint. The Plaintiff's claims herein relate to alleged denials in 2021 and 2022 of accommodations under the Americans with Disabilities Act and New York State Human Rights Law and alleged retaliation against Ms. Domroe with respect to her health insurance benefits. **ECF No. 1, ¶¶** 3 through 8.

In Plaintiff's separate New York State Supreme Court litigation, in which she is suing the DSS client/assailant and others, and in which the County is a named third-party defendant, the Court issued a broad, all-encompassing order that, *inter-alia,* denied authorization for Plaintiff or any other witness to testify regarding their interactions with the DSS client/assailant and denied Plaintiff's request to obtain DSS records and information regarding the DSS client/assailant. ("State Court Order"). A copy of the State Court Order with notice of entry and Plaintiff's notice of appeal therefrom is annexed hereto as **Joint Exhibit "3"**; the appeal has not yet been decided. A copy of Plaintiff's notice of motion, which delineates the items of relief sought by Plaintiff from

the State Court, and which were all denied in the State Court Order, is annexed hereto as part of **Joint Exhibit "2"**.

Your Honor is respectfully referred to the parties' Joint Status Report submitted on August 28, 2026 (**ECF Doc. No. 33**) at Pages 2-4 in support of Defendant's position that the issuance of an order of preclusion, pursuant to both Fed. R. Civ. P. 26(3)(b) and Fed. R. Civ. P. 30(d)(3), is warranted, and that Plaintiff should be prohibited from any questioning regarding the underlying facts of the Incident, including but not limited to questions relating to knowledge and information Ms. Haruthunian or any other witness may have pertaining to the DSS client/assailant.

Dispute Regarding Email Exchange That Occurred Between May and June 2022 (Attached in Redacted and Unredacted Form as **Joint Exhibit "6"**)

At Ms. Haruthunian's deposition, Plaintiff's counsel asserted that it was permissible to utilize an unredacted email exchange that occurred between May and June 2022; the email exchange was ultimately marked in redacted form at the deposition as Exhibit 14. *See* **Joint Exhibit "1"** at Pages 67-69. Plaintiff's rationale for claiming the right to use an unredacted version of the email exchange was that "[t]his was a document that was produced to use unredacted on January 6, 2026 and not until August 7, 2026 was claimed to be privileged." *See* **Joint Exhibit "1"** at Page 69. This was notwithstanding that, in Defendant's August 6, 2026 Supplemental NYS System Emails Response, Defendant produced a redacted version of the email exchange, which was marked as NYS Server Document 000318-000319 (*see* **Joint Exhibit "6"**), and that Defendant produced a Privilege Log that listed as the reason for the redaction Attorney/Client Privilege and Work Product. A copy of said Privilege Log is attached as **Joint Exhibit "7"**.

Defendant respectfully submits that Plaintiff's claimed rationale for the right to use an unredacted version of the email exchange is both disingenuous and unavailing. Notwithstanding that an unredacted version of the email was produced to Plaintiff as part of Defendants' Responses and Objections to Plaintiff's Demand (Emails from NYS system), which was served on Plaintiff on January 2, 2026, these Responses and Objections clearly state that Defendant objected to the demand for the NYS server records to the extent that they sought disclosure of material covered under, *inter alia*, the attorney-client privilege and work product doctrine, and the records were produced without waiver of these privileges and protections. *See* **Joint Exhibit "5"**, Page 2, ¶ 2; Page 6, ¶ 3(b), and Page 7 (reserving right to object to any document that contains privileged or confidential information).

It was similarly made clear in former defense counsel's status report filed on January 5, 2025 that "*[t]he [ January 2, 2026] production was preliminary*" and that the Defendant would, at a future point "provide a privilege log for documents that are confidential pursuant to attorney client communications, attorney work product, and executive privileges." **ECF Doc. No. 20**. (emphasis added). Defendant did exactly that on August 6, 2026, when it served the Supplemental NYS System Emails Response with Bates Stamped documents and a Privilege Log. Further, at the time of the preliminary production of the unredacted NYS Server Records in early January 2026, there was a Protective Order in effect. *See* Paragraph 4(b) of **ECF Doc No. 10** and docket entry dated February 28, 2025 (Order granting Plaintiff's motion for a Protective Order, which references **ECF Doc. Nos. 10 and 11**). For Plaintiff to now attempt to utilize documents that were clearly intended to be, were marked as, and under applicable law are,

privileged and confidential, is simply disingenuous. *See La Liberte v. Reid*, 2024 WL 22781 (E.D.N.Y. 2024).

Respectfully submitted,

VALLI KANE & VAGNINI LLP
Attorneys for Plaintiff Jamie Domroe

s/ *James Vagnini*

cc: Defendant via ECF