# JOINT EXHIBIT "1"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------x

JAMIE DOMROE,

Plaintiff,

Case No. 2:24-cv-6545

-against-

NASSAU COUNTY,

Defendant.

-------------------------x

600 Old Country Road
Garden City, New York

August 25, 2026
10:02 A.M.

DEPOSITION OF JAMIE HARUTHUNIAN, a Non-Party Witness in the above-entitled action, taken by the attorney for the Plaintiff, pursuant to Notice, held before Andrea Bloecker, a Notary Public within and for the State of New York, at the above time and place.

A P P E A R A N C E S:

VALLI KANE & VAGNINI
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York 11530

BY: BRENDAN CARMAN, ESQ.
BCARMAN@VKV.LAW
ROBERT J. VALLI, JUNIOR
JAMES VAGNINI, ESQ.

BEE READY LAW GROUP, LLP
Attorneys for Defendant
170 Old Country Road, Suite 200
Mineola, New York 11501

BY: CATHERINE V. BATTLE, ESQ.
CBATTLE@BEEREADYLAW.COM
File No. 1000-2603

preserve everything. So I preserve everything.
Not specific to this lawsuit, no.
Q Not speaking about with your attorney, but have you ever exchanged texts, e-mails, other communications with anyone about this lawsuit?
A No.
Q Are you currently employed?
A Yes.
Q Where do you work?
A Social Services in Nassau County.
Q That was would be DSS, Department of Social Services?
A Yeah, DDS.
Q What's your job title there?
A My union title is Community Service Representative. My in DSS title is Director of Housing.
Q How long have you held the Director of Housing title?
A Since about 2015, 2014, 2015. I think 2015 sounds better. Yeah, 2015.
Q Have you held any other job titles with the County?
A Yes.

A Yeah. I tried to pull -- I did pull the statement I wrote in 2019 to my then boss, and then there wasn't many e-mails to go through so I just read through them quickly.

Q What statement was that?

A A statement on the day Jamie was transported to the hospital.

Q Did you read the complaint filed in this lawsuit? Did you review that?

A No.

Q So you're aware that we're here today for a lawsuit that Ms. Domroe filed against Nassau County alleging disability discrimination?

A Yes.

Q Are you aware that Ms. Domroe's filed a separate lawsuit against Central Nassau Guidance relating to personal injuries for an assault?

A Informally, yes.

Q So you're aware that today we're not here talking about that personal injury case but today we're talking about the case against the County for this discrimination issue?

A Yes.

Q Did you have any role in collecting

Q Are you aware that at some point Ms. Domroe was attacked at work?
A I am.
Q Do you remember approximately when that attack took place?
A July of 2019.
MR. CARMAN: I'm going to introduce another exhibit here.
(Whereupon, a redacted e-mail, dated July 17, 2019, was marked as Plaintiff's Exhibit 2, for identification, as of this date.)
MS. BATTLE: Can we go off the record for a second.
MR. CARMAN: Yes.
(Whereupon, a discussion was held off the record.)
MR. CARMAN: We're introducing Exhibit 2, Bates stamped NYS server document 370.
Q Do you recognize this document?
A I do.
Q What is this document?
A My statement to my supervisors after the

attack.

Q This is dated July 17, 2019, correct?

A Correct.

Q It looks like the attack happened the day before, July 16?

A I don't remember. I feel like I wrote this the same day, but I don't remember.

Q The first line here it mentions --

A Oh, yes. Sorry.

Q -- Here is my summary of the incident that occurred between Jamie Domroe and client, redacted, on July 16.

A Yes.

Q Do you see in the first paragraph it states care coordinator from CNG, Julian, was also present during the interview?

MS. BATTLE: Objection.

Don't respond.

Counsel, you previously stated that we would not be getting into the incident.

MR. CARMAN: I did not state that.

MS. BATTLE: You indicated --

MR. CARMAN: I did not state

that.

MS. BATTLE: Okay. Let me finish.

You indicated that the subject of this deposition would not be the subject matter that's in connection with the state law court proceeding, that this would be only related to the ADA proceeding.

Now you're asking questions that go directly to the subject matter of the state court proceeding. It's my position that this is being undertaken in bad faith. There are depositions, to my understanding, that may take place in that proceeding and any questions that go to the subject matter of the state court proceeding that go to the incident it's my position that that's being done in bad faith and I object on the basis of Rule 30(d)(3) that this is being conducted in bad faith.

MR. CARMAN: I hear your objection and we disagree. That this is relevant

to this lawsuit and so we'd like to proceed with the questioning.

MS. BATTLE: I am directing the witness not to answer.

MR. CARMAN: Okay.

MS. BATTLE: On the basis that this is being conducted --

MR. CARMAN: This is absolutely relevant to this case. This deals with the underlying disability that our client deals with. The accommodations that she needs are specific to what happened on this date. So we need to ask these questions.

You can put your objection on the record, but we can't be stopping the deposition over this.

MS. BATTLE: I think this is bad faith. I'm directing her not to answer.

MR. CARMAN: It's absolutely not in bad faith.

MS. BATTLE: There is nothing in this statement that relates --

MR. CARMAN: Then we can get the

judge on the phone.

MS. BATTLE: That's fine.

There's a separate lawsuit that's pending. These questions can be asked in that separate lawsuit that has nothing to do with this case.

MR. VAGNINI: Let's go off the record.

(Whereupon, a discussion was held off the record.)

MR. CARMAN: Can you read back my last question.

(Whereupon, the requested portion of the record was read back by this reporter.)

MR. CARMAN: I'm just going to move on to another question.

Q Ms. Haruthunian, is it your understanding --

MS. BATTLE: Was the question withdrawn?

MR. CARMAN: No, I'm not withdrawing the question. I'm moving on to another question.

Q Is it your understanding that you're represented by counsel, Ms. Battle here?

A Yes.

Q Are you going to follow your attorney's instruction not to answer my previous question?

A Yes.

MR. CARMAN: I think we're going to contact chambers.

(Whereupon, a call to Judge Dunst was made.)

COURT CLERK: Hello, Judge Dunst's chambers.

MR. CARMAN: Hi. Good afternoon. This is Brendan Carman. I'm an attorney for the plaintiff in the Domroe versus Nassau County lawsuit.

I'm here during a deposition with counsel for the witness. We have a dispute that we'd like to raise with Judge Dunst.

COURT CLERK: Can I have the case number, please.

MR. CARMAN: Sure. 2:24-CV-06545.

COURT CLERK: One moment.

Okay, let me just place you on a brief hold and let me see if the judge is available.

MR. CARMAN: Okay.

(Whereupon, there was a brief pause in the proceeding.)

COURT CLERK: Hello.

MR. CARMAN: Yes. Hello.

COURT CLERK: Hi. I just want to let you know that I spoke with the judge. He'll be available in less than five minutes if you wouldn't mind just staying on hold.

MR. CARMAN: Sure. Thank you.

(Whereupon, there was a brief pause in the proceeding.)

JUDGE DUNST: Hi. This is Judge Dunst.

Who's on the line?

MR. CARMAN: Good afternoon, Your Honor. This is Brendan Carman, counsel for the plaintiff, Jamie Domroe.

JUDGE DUNST: Good afternoon.

MS. BATTLE: And Catherine Battle, attorney for defendant, Nassau County.

JUDGE DUNST: Good afternoon. Good morning, rather. Excuse me.

All right, so who's being deposed and let me see how I can help you all.

MR. CARMAN: Sure.

Jamie Haruthunian is being -- we're deposing her. She's an employee with the County, I've been told is appearing as a non-party witness.

So the issue is we're asking -- to refresh Your Honor's recollection, this is a disability discrimination lawsuit. Plaintiff alleges that she was attacked while working at the County, attacked by one of her clients at the Department of Social Services, and this attack, which happened on the County property was quite traumatic and led to physical and, more importantly, emotional disabilities that she then suffered; namely, PTSD.

So we got into a line of questioning to ask the witness, who was

there for the attack, about basically just some background details about the attack, the witness' perception of that and, essentially, how things went.

From our perspective, the attack is absolutely relevant to this lawsuit because it essentially is the root cause of her disability, the PTSD. The PTSD is --

JUDGE DUNST: The non-party witness was present at the time of the incident?

MR. CARMAN: Yes, and she submitted a statement --

JUDGE DUNST: Okay.

Ms. Battle, what's the issue here?

MS. BATTLE: Your Honor, the issue is that there's a separate state court legal proceeding in which the plaintiff has sued a defendant. The County is named as a third-party defendant.

The attack itself is the subject of that lawsuit. There's a court order in that lawsuit prohibiting the disclosure of any information relating to the

client. There are federal and state protections that protect all aspects of the client's information.

Our position is these questions regarding the underlying attack there's no dispute they have nothing to do with this lawsuit. The attack occurred in 2019. This lawsuit is about four instances of an alleged failure to accommodate that started in 2021.

My position is this is a bad faith attempt to make an end run around the court order in the state court proceeding and to get information regarding the underlying attack that could be used by plaintiff in that court proceeding.

JUDGE DUNST: I don't know anything about the state court order. Does that apply to this witness?

MS. BATTLE: Well, in that case, Your Honor, my understanding is that all the depositions of defendants -- let's say County witnesses or County have been held back because of that court order

because the court had said that no information regarding this client can be disclosed. So those depositions have not taken place yet. I would anticipate --

JUDGE DUNST: What's the witness' current employment status or relationship, if any, with Nassau County?

MS. BATTLE: She's currently employed by Nassau County as the Director of Housing.

I have no objection to her being deposed regarding the accommodations that were granted that are the subject of this litigation, but with respect to any questioning regarding the underlying assault -- as counsel stated, there is currently marked as Exhibit 2 a statement that this witness gave regarding the underlying incident. Beyond that, the fact of the incident has been established, but any questions regarding this client, the background of this client is, again, I would say not only beyond the scope of Rule 26, but also I

would submit that it's being made in bad faith in violation of Section 30 --

JUDGE DUNST: We don't need to talk about bad faith for right now.

Mr. Carman, this is also happening with me on the fly in terms of court orders from the state court that are certainly not before me, and I'm highly reluctant over the phone without further submissions to me to order a witness to answer questions that defendant is representing to me could potentially violate a state court order.

MR. CARMAN: Your honor, if I may, we're not here to talk about this particular client's name. We're using --

JUDGE DUNST: I assume not. That I've assumed.

MR. CARMAN: Right.

And we're using a redacted exhibit. I'll point out --

MS. BATTLE: May I just add --

MR. CARMAN: Excuse me, please.

JUDGE DUNST: Hey, folks, listen.

I don't know what the language is in the state court order and I am not going to authorize on the fly a witness in a deposition to testify in a matter that could potentially violate a state court order.

If this is something that the defendant thinks they have a good faith basis to direct their witness at this time not to answer questions because those questions could -- the answers to those questions could violate a state court order, assuming defendant has a good faith basis for that, I'm not going to order that at this point.

This is what I'm going to rule right now. Continue your deposition, ask questions that do not allegedly run afoul of the state court order. You can leave the deposition open. You all can address this with me after the deposition in a manner that I actually can see what the court order says. You all can review this.

I'll tell you something though, Ms. Battle, if I find that you're over stating the scope of the state court order and this witness has to come back for a continued deposition, I'm quite confident Mr. Carman and his clients are going to be asking me for the costs associated with taking a second deposition of this witness, which I'll certainly seriously consider. So that's how we're going to proceed.

MS. BATTLE: Your Honor, may I just add that it's not just a question of the state court Order. It's a question of both state and federal rules and regulations that prohibit --

JUDGE DUNST: I got none of that in front of me.

MS. BATTLE: I understand, but --

JUDGE DUNST: Let me continue.

I'm certainly not making a ruling on the fly that I'm going to give this witness a free pass not to answer questions in a deposition when I have

none of this before me in an organized manner whereby I can make a rasher ruling for both sides.

So continue the deposition and then, again, assuming there's a good faith basis for this, I'm sure I'll be hearing from you all after the deposition in a joint letter.

MR. CARMAN: Thank you, Your Honor.

JUDGE DUNST: Mr. Carman, any other help?

MR. CARMAN: If I may, one other point. The documents that we're trying to ask the witness questions about were produced to us by the defendant in this lawsuit. So we don't appreciate the characterization of this as being asked in bad faith when they produced it to us.

JUDGE DUNST: And I'm not commenting. I think you all have gotten my ruling, okay. So move forward, and, again, I'm not making any observation about good faith or bad faith by anybody

here.

I'm going to assume that everyone's making representations -- and I have no reason not to think otherwise. I think both of you are making representations to me in good faith, and I think I've made it pretty clear that if it turns out that the direction by defense counsel to this non-party witness not to answer these questions on the basis of a state court order or other regulations if I conclude that that's not a good faith argument then we'll address that in the future.

Ms. Battle anything else?

MS. BATTLE: No, Your Honor. Thank you.

JUDGE DUNST: So proceed with the deposition. Have a good rest of the day.

Thank you.

MR. CARMAN: Thank you, Your Honor.

MS. BATTLE: Thank you.

Q You ready to continue?

A I think so.

Ms. Domroe?

MS. BATTLE: Objection. Asked and answered.

Q You can answer.

A Yes.

Q Did you approve this request for accommodation?

MS. BATTLE: Objection to form.

A So I never got this form, but I know there's e-mails that I said no problem. It was approved on my end.

Q So somebody had asked you can Ms. Domroe --

A Yes.

Q -- or should this accommodation request be approved?

A Yes.

Q Do you recall who it was that asked you that?

A I believe it was Lorriane Baum.

Q On the final page, there's a signature there for a department head.

A Uh-huh. Yes.

Q Do you recognize that signature?

A Yes.
Q Who is that?
A Nancy Nunziata. She was the commissioner.
Q Commissioner of DSS?
A Social Services. Yes, DSS.
Q There's also a signature here by an EEO representative.
A Yes.
Q Do you recognize that signature?
A Yes.
Q Who is that?
A Constance Kenton.
Q What's her job title?
A I do not know what her title was. She worked in Medicaid.
Q It looks like she signed next to EEO representative, right?
A At some point she was our EEO representative.
Q When you say our EEO representative, you're referring to DSS's EEO rep?
A Yes.
Q What's your understanding of the EEO

Q There's a reference here at the end. It says, Jamie has no access to HSS e-mail right now but can be contacted at, and it lists a personal e-mail address.

Do you see that?

A Yes.

Q Do you know if Ms. Domroe eventually got access to a work e-mail while she was working remotely?

A Yes.

Q Do you know if she was able to make phone calls for work while working remotely?

A She was.

Q You can set that aside.

MR. CARMAN: I'll introduce Exhibit 9. It's Bates stamped defendant documents 1292 through 1295.

(Whereupon, a document, Bates stamped Defendants 1292 through Defendants 1295, was marked as Plaintiff's Exhibit 9, for identification, as of this date.)

A Okay.

Q So what is this document?

A An e-mail chain between Jeanne Vassel, who was the HR director at the time, and Lorraine Baum, who was the deputy commissioner at the time, and I am CCed on them.
Q What is this e-mail thread regarding?
A Her PC being ready, which is, I believe -- yep, her County laptop, her token and then -- that's your token password, and then HR just ensuring her stuff was in place to start working remotely.
Q You said Jeanne Vassel was a director of human resources?
A At that time.
Q In her signature block, it appears to say Director of Human Resources slash Payroll Nassau County Department of Social Services underneath.
A Yes.
Q Is she a director of human resources like specific to DSS or --
A Yes.
Q Okay.
A She was -- DSS has their own HR underneath County HR.
Q Other than this County laptop was there

A Yes.

Q Generally she did a good job?

A Yes.

MS. BATTLE: Objection. Vague.

Q Are you aware of anybody criticizing Ms. Domroe's performance while she worked remotely?

MS. BATTLE: Objection. Vague.

A I'm not aware of that, no.

MR. CARMAN: I'm going to introduce Exhibit 14.

(Whereupon, an e-mail, dated June 1, 2022, was marked as Plaintiff's Exhibit 14, for identification, as of this date.)

MS. BATTLE: Before there are any questions on this document, I would note that I provided a redacted version of this with respect to the -- portions of it were redacted for attorney/client privilege. This was provided with the Bates stamp numbers under New York State server Bates stamp numbers.

Let me see if I have that with

me.

So I would ask that in lieu of this document that's been marked now as Exhibit 14 we utilize the redacted version that I provided as part of the Bates stamp New York State server document.

MR. CARMAN: Do you have a copy of that with the Bates stamp numbers?

MS. BATTLE: I don't believe I have it, but I'll take a look.

MR. CARMAN: Off the record.

(Whereupon, a discussion was held off the record.)

(Whereupon, a lunch break was taken from 12:11 P.M. to 12:53 P.M.)

MR. CARMAN: When we left off before lunch, we had introduced an Exhibit 14 and counsel objected based on attorney/client privilege and work product privilege. So for the purposes of right now we will use the redacted version of this exhibit.

For the record, we object to the

characterization of this document as privileged, and we reserve the right to challenge that and we'd like to mark that for a ruling. This was a document that was produced to us unredacted on January 6, 2026 and not until August 7, 2026 was claimed to be privileged.

(Whereupon, a redacted e-mail, dated June 1, 2022, was marked as Plaintiff's Exhibit 14, for identification, as of this date.)

Q We spoke a little bit before about employees working remotely during COVID, do you recall?

A Uh-huh. Yes.

Q Pre-COVID can you tell me generally speaking how did your office operate in performing their jobs?

MS. BATTLE: Objection to form.

Q Let me rephrase that.

A Okay. It's pretty vague.

Q I agree.

Before COVID, Ms. Domroe worked in the office?